# FIRST AMENDED COMPLAINT

RECEIVED
U.S. COURT OF APPEALS
FOR THE D.C. CIRCUIT

# UNITED STATES DISTRCIT COURT

2006 MAR 30 PM 4 13

## DISTRCIT OF COLUMBIA

FILING DEPOSITORY

|  |  |
|---|---|
| AHMED SIDDIG OSMAN, | ) |
| 12807 Bluet Ln. | ) |
| Silver Spring, MD 20906 | ) |
| (301)933-4402 (Tel) | ) **Case No 1:06CV00191** |
| (202)318-8886 (Fax) | ) |
| Plaintiff, | ) **HHK** |
| vs. | ) |
| Randall Tobias, | ) |
| Administrator, | ) **COMPLAINT** |
| U.S. Agency for International | ) **EMPLOYMENT DISCRIMINATION** |
| Development, (USAID), | ) **DEMAND FOR JURY TRIAL** |
| Agency, | ) |
| Defendant | ) |

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

1. **Plaintiff resides at:**

   Address                12807 Bluet Ln

                          Silver Spring, Maryland 20906

   Phone / Fax            301-933-4402/Fax 202-318-8886

   E-Mail                 Nuba22@Verizon.net

   **Defendant is located at:**

   Address                1300 Pennsylvania Ave, NW

                          Ronald Reagan Building

                          Washington, D.C. 20523-1000

   USAID is an independent federal government agency.

RECEIVED

MAY 3 0 2006

NANCY MAYER-WHITTINGTON, CLERK
U.S. DISTRICT COURT

**JURISDICTION-**

2.    This action is brought by plaintiff, Ahmed Siddig Osman, pro se, against Mr. Randall Tobias, Administrator of the U.S. Agency for international Aid (USAID), for discrimination in employment pursuant to Title VII of the Civil Rights Act of 1964 for employment discrimination as amended, 42 U.S.C. §§ 2000e TO 2000e-17 et seq. (race, color, religion, and national origin)and the Age Discrimination in Employment Act of 1967 (ADEA), as codified, 29 U.S.C. §§ 621-634 and the Civil Rights Act of 1991. Equitable and other relief is sought under 42.U.S.C. Section 2000-5(g).

**Venue**

3.    The plaintiff relies on the special venue provision of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f) (3). Venue is appropriate in this Court because the unlawful employment practice is alleged to have been committed in the District of Columbia, in which the employment records relevant to such practice are maintained and administered, in which the plaintiff would have worked but for the alleged unlawful employment practice, and in which the defendant has his principal office.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

4.    The plaintiff has fully exhausted his administrative remedies in accordance with 42 U.S.C. Section 2000e-16(c) in that, following conclusion of consultation with the EEO Counselor, Mr. Russell Backus, he filed an Administrative EEO Complaint on February 7, 2001 asserting that his non-selection for the two posts he had applied for were motivated by illegal discrimination against him on the basis of national origin, race, religion, and reprisal for engagement in a previous complaint with EEO.

2

**5.**    The complaint was accepted by letter dated April 23, 2001. The Report of Investigation was completed on September 10, 2001. Administrative Judge Laura Khare was assigned to the case. She issued the Acknowledgment Order on December 2, 2002. A second Acknowledgment Order was issued due to the Agency's claim it had not received the earlier one. Discovery was scheduled to end on February 10, 2003. The Complainant responded to the discovery requests of the Agency.

**6.**    After affording herself a two-week extension of time to respond to the discovery requests of the Complainant, Agency counsel refused to respond to any of the  discovery requests and filed a Motion for a Protective Order. The Complainant submitted several motions to the Administrative Judge to compel the Agency to respond but to no avail. The Complainant filed a complaint to the EEOC Acting Director requesting action on his motions by the Administrative Judge.

**7.**    On May 20, 2003 Administrative Judge Khare issued a Discovery Order denying "The Agency's Motion for a Protective Order" and asking it to "respond in full to the first thirty interrogatories, admissions, and documents submitted by the Complainant" and that " under the discovery procedures set forth in the Acknowledgment Order, Complainant is entitled to a reasonable number of depositions" and that "the Agency is reminded that it must make the requested federal employees available for deposition ..."

**8.**    After the discovery process got under way the Agency counsel improperly terminated five on-going depositions by walking out the deponents. She further canceled a sixth deposition scheduled to convene within 24 hours. Following that, Agency counsel filed motion for Summary Judgment. The Complainant filed motions

3

asking for his right to complete the discovery process and to depose the witnesses whose depositions were agreed on with the Agency as ordered by the Administrative Judge.

9.     The Administrative Judge stayed the Agency's motion for Summary Judgment as being premature and ordered redeposition of witnesses and resumption of the deposition of the sixth witness as previously ordered. Redeposition of witnesses resumed.

10.     In July 2004 Administrative Judge Khare left the EEOC and the case went stale for six months. In January 2005 the case was assigned to a new Administrative Judge, Gerald Goldstein. Without communicating with the parties or letting the Complainant to complete the on-going redeposition of witnesses as ordered by the previous administrative judge, Judge Goldstein invoked on his own initiative the Agency's stayed motion for summary judgment and acted on it in favor of the Agency without even giving the Complainant the right to respond to it.

11.     The Complainant appealed the Agency's final order to the EEOC on the ground that he was denied due process of the law: He was not allowed to complete the discovery process as ordered by Administrative Judge Khare, the Agency did not invoke its stayed motion for summary judgment anticipating the completion of the redeposition of the witnesses by the Complainant and that he was denied the right to respond to the summary judgment.

12.     The EEOC decided on November 15, 2005 to affirm the Agency's final order and issued the Complainant his right to file a civil suit in an appropriate U.S. District Court within ninety calendar days from the date of his receipt of its decision.

4

## ISSUES IN THE COMPLAINT

**13.**   The plaintiff alleges that he was discriminated against based on national origin, race, religion, and age when:

> (1) He was not selected for the Personal Services Contract (PSC) position for the Program Officer for Sudan, advertised under Solicitation Number M/OP-00-1277, issued June 9, 200, and was not informed of the status of his application in spite of his repeated requests; and

> (2) he was not selected for the Personal Services Contract position of Conflict Analyst in the Bureau for Humanitarian Response (BHR), advertised under Solicitation Number M/OP-00-1321, issued on June 23, 2000 on the ground that he was "overqualified".

**14.   The Plaintiff**

The plaintiff, an Africa-American, belongs to a protected class. He is Muslim, of Sudanese national origin and is over forty years of age. He timely applied for the above-cited two jobs for which the defendant (USAID) was seeking applicants. The plaintiff was rejected despite being qualified for both jobs. Both positions were filled by persons outside his protected group.

**15.**   Plaintiff alleges with respect to the position of Program Officer for Sudan that:

a.   The defendant failed to give the plaintiff a clear and a specific reason for his non-selection for the position of Program officer for Sudan. The plaintiff requested several times a written response of the outcome of his application for the Sudan position but the Agency has been adamant not to respond. The

defendant engaged in a cover-up of the fact that the plaintiff was not considered for position of the Program Officer for Sudan and that a non-applicant was substituted for him in the Resume Books.

b.   The selection panel members for the Sudan position, Mr. Greg Gottlieb, Mr. Edward Maly and Ms. Sydel Maher colluded together to appoint a less-qualified person, Ms. Jacquelyn Poole-Galdas, for the position of Program Officer for Sudan and excluded the plaintiff from consideration for the position.

c.   Defendant treated the plaintiff differently from the one he selected for the Sudan position, Ms. Jacquelyn Poole-Galdas. The way defendant processed the application of the selectee contravened its own regulations, CIB 98-12. [Exhibit 1, Regulation CIB 98-12]

d.   Mr. Edward (Ted) Maly, who set up the selection panel, acted favorably in submitting the application of Ms. Jacquelyn Poole-Galdas who was subsequently selected for the Sudan position. Mr. Maly's fax to Mr. Kirk Dohne of GlobalCorps stated "*I am forwarding it* [the application] *for her* [Ms. Jacque Poole-Galdas] *as she had trouble with the phone and fax lines in Nairobi*" did not reflect the reality of the situation. The defendant withheld this cover-fax when it submitted the application of the Ms. Poole-Galdas to the Investigator, [Exhibit 2, Fax-cover submitted by Mr. Maly to GlobalCorps]. What Mr. Maly did was to retrieve an **old undated** SF-171 application of Ms. Poole-Galdas [Exhibit 3, Ms. Poole-Galdas SF-171] and submit it with an **unsigned** cover letter in the name of Ms. Poole-Galdas. This contravenes USAID Regulation CIB 98-12.

6

e.  The defendant (the Agency) obstructed the course of investigation and justice by not disclosing to the EEO Counselor, Mr. Russell Backus; the Investigator, Mr. Alexander Faison; and the plaintiff the real reasons for the non-selection of the plaintiff for the position of the Program Officer for Sudan.

f.  Mr. Greg Gottlieb, under whom the Program officer position fell, misled the Investigator, Mr. Alexander Faison, by falsely stating in his affidavit "I looked over the book that contained the CVs of candidates. However, I was not involved in the evaluating, interviewing, or selection of candidates." [Exhibit 4, Affidavit of Greg Gottlieb].

g.  Ms. Tamra Halmrast-Sanchez, who approved the selection of Ms. Poole-Galdas for the Sudan position, was briefed in writing by Mr. Kirk Dohne of GlobalCorps on August3, 2001 about the substitution of a non-applicant for the plaintiff for the Sudan position. In her affidavit of August 7, 2001 she knowingly withheld this material information from the EEO investigator, Mr. Faison. This is an obstruction of investigation and justice. [Exhibit 5, Mr. Kirk Dohne's e-mail to Ms. Tamra Halmrast-Sanchez].

h.  Mr. Greg Gottlieb and the members of the selection panel were aware of the substitution of the non-applicant for the plaintiff for the position of Program Officer for Sudan yet they did nothing to alert the responsible officials to take corrective action and never mentioned it to the Investigator, Mr. Faison. This is an obstruction of justice.

**16.** **On the Conflict Analyst position the plaintiff claims and alleges that:**

a) (1) he is a member of the ADEA's protected class of persons over forty years of age; (2) he was qualified for the position he applied for and was ranked in the "A Category" among the highest qualified applicants for the position; (3) he suffered an adverse employment action despite his qualifications; and (4) he was disadvantaged in favor of similarly situated younger applicants.

b) The defendant used the discriminatory criteria of **"over-qualification"** to eliminate the plaintiff and those presumed to be above 40 years of age from consideration for the position of Conflict Analyst. Read in its context and how it was selectively applied this is nothing less than age discrimination.

c) Ms. Carleene Dei, Chairperson of the selection panel for the Conflict Analyst, influenced the selection panel by telling them in advance her choice of candidates to be interviewed and the selection criteria she used, which were discriminatory and inconsistent with the solicitation criteria. On August 4, 2000 Ms. Dei sent the following key e-mail to the selection panel:

```
``From: Dei, Carleene
Sent:    Friday, August 04, 200 1:25 PM
To:           Joshi,Ajit; Ott, Dana; Buckley,Ruth
Cc:    Rosier, Suzette
Subject:    List of candidates proposed for interview
As promised, I have reviewed the A list of candidates for the
SO10 job of Conflict Analyst. I must admit that I was [v]ery
impressed with the quality of the candidates and the
excellent academic and professional credentials. At the same
```

8

time, I believe that the following candidates are the best qualified for the job that we are proposing.

In terms of how I made my selection, my criteria were the following:

1. I eliminated the candidates that I thought were over-qualified. Note that this job requires experience, the ability to think creatively and act independently etc. At the same time the person will be reporting to a division chief and will be sitting in a cubicle, and will probably have to do some grunt work. **Someone with thirty years of experience (above all a non-USAID)**, fifteen years of work as an independent consultant, CEO of a firm etc. **will not hang around and we need some continuity in this department.**

2. **I gave an extra credit** to people who had actually lived and worked overseas on projects (regardless of the type of project). Theory is nice, but nothing beats a couple of years in the field.

3. I selected people who had actually thought about, written about or worked in the area of conflict (as opposed to refugee/relief type work, food aid, etc).

   **PROPOSED LIST: (Not in order of preference)**

   1. Kim Clark

   2. Konrad Huber

   3. Robert Leavitt

4. Julie Lenon

5. Laura Marks -

6. Sandra Schuster

RUNNER UP Kury Cobham*

Would everyone please submit their choices to Suzette so that she can put it together and come up with a chart. **From there, Ajit** [Assistant to Ms. Dei] **should be able to make the final selection** and we should be able to set up interviews for the week of the 14th of August. Also, would everybody please propose assessment criteria and points so that we can do a marking sheet.

Thanks in advance

Carleene

Thanks'' [End of Ms. Carleene Dei's e-mail, emphasis added].

d)   In this context, one could reasonably infer that eliminating those who were considered ``over-qualified'' and ``those with 40 years of experience'' was equivalent to the application of the inadmissible age criterion in the selection process. As a matter of fact Ms. Dei excluded from her list of candidates proposed for interview, **all** applicants in the ``A Category'' who graduated after 1986, presumed to be over 40 years of age. She only chose applicants who graduated in 1986 or later, presumed to be less than 40 years of age.

10

## Persistent Discrimination

**17.**    The plaintiff believes that the defendant is still discriminating against him for he has applied for many positions solicited by the defendant for whom he was aptly qualified but was turned down on every application he had submitted. Among the positions he applied for are the following:

(1) Program Management/Implementation for Non-Presence Countries in the Middle East and South Asia , Solicitation Number: M/OP-01-1171; Issued Date: June 27, 2001

(2) Program Officer for Southern Sudan, Solicitation No: M/OP-02-855

ISSUANCE DATE:  April 3, 2002

(3) Senior Humanitarian Advisor (SHA) - Northern Sudan, Solicitation No: M/OP-03-870; ISSUANCE DATE: March 28, 2003

(4) Program Manager (Sudan), Solicitation No DCHA/OTI -04-0334
ISSUANCE DATE: December 29, 2003

(5) Program Officer for Southern Sudan, SOLICITATION NO: M/OP/DCHA/DOFDA-04-642 ; ISSUANCE DATE:  February 20, 2004

(6)Senior Economic Advisor - Yemen, Solicitation No. RFP# 279-04-004

Issuance Date: March 29, 2004

(7) Program Manager (Sudan), Sol. DCHA/OTI -04-0334;
Issuance Date: December 29, 2003

(8)  Field Advisor / IDP Advisor, Solicitation No. DCHA/OTI-04-1847
Issuance Date: 29 July, 2004

(9) Field Advisor / Field Advisor / IDP Advisor, No. DCHA/OTI-04-2258
Issuance Date: 09 September, 2004

(10) Response Alternatives for Technical Services (RATS)
DCHA/OFDA-04-1701, ISSUANCE DATE: July 21, 2004

(11) M/OAA/DCHA/OTI-06-394 North Sudan Team Leader
M/OAA/DCHA/OTI-06-394, ISSUANCE DATE: September 26, 2005

11

## FACTS GIVING RISE TO PLAINTIFF'S CAUSE OF ACTION

**18.**    The plaintiff is an American of Sudanese national origin. He first came to the U.S. in 1960 as a young scholar guest of American high schools and families. He was selected in a national competition supervised by the American Embassy in Sudan, University of Khartoum and the Ministry of Education. The New York Herald Tribune was the sponsor of the program that included forty foreign students representing their respective countries. In 1962 the plaintiff was awarded Wein International Scholarship at Brandeis University and the Dartmouth Class of 1956 Foreign Scholar Scholarship which carried with it home hospitality of members of the Class of 1956. On advice of the staff of the American embassy in Sudan the plaintiff opted for Dartmouth College and became the first Sudanese to graduate from an American college; others went to Russia and Eastern Europe.

**19.**    Following his graduation from Dartmouth with a BA in economics the plaintiff pursued his graduate work at Harvard and Fletcher School of Law and Diplomacy in economic development, law and international development assistance earning his MA, MALD and passing his Ph.D. orals with distinction. He joined Dartmouth College as a lecturer and Director of its Foreign Study Program in West Africa in 1974. From 1976 to 1993 he worked in international development and humanitarian assistance as Senior Economist and Economic Advisor for international and regional development institutions in Saudi Arabia and Kuwait (Islamic Development Bank and Kuwait Development Fund) implementing development and humanitarian assistance projects in more than forty countries in Africa and Asia.

12

**20.** After twenty years of work in international development and humanitarian assistance, mostly in Africa, the plaintiff came back home in 1994. Since USAID work is similar to what he was doing in Africa he got interested in working with it. An opportunity opened in 1994 when two positions for field representatives in Sudan were advertised by USAID. The plaintiff applied for one but had no response to his application. He was told later that he was "overqualified for the position". An applicant, outside his protected class, working in Sri Lanka, with no experience in Africa, was selected for the position.

**21.** The plaintiff filed a complaint of discrimination with EOP in 1994 and left to Sudan to volunteer his services in humanitarian assistance, community development, governance and human rights. Shortly before bombing al-Shifa pharmaceutical plant in Sudan the U.S. Government pulled its entire diplomatic and USAID staff out of Khartoum to Nairobi. The plaintiff returned to the States in June 1999.

**22.** In June 2000 the plaintiff applied for the following two Personal Service Contracts (PSCs) solicited by USAID through its subcontractor GlobalCorps:

> (1) Program Officer for Sudan, issued on June 9, 2000, under Solicitation Number M/OP-00-1277; and
>
> (2) Conflict Analyst, issued on June 23, 2000, under Solicitation Number M/OP-00-1321.

**23.** Mr. Kirk Dohne of GlobalCorps informed the plaintiff by letter dated October 4, 2000 that he was not selected for the Conflict Analyst position. He mentioned to the plaintiff that he was *"overqualified for the job"*.

13

1    **24.**    The plaintiff was weary for not having heard about his earlier application for
2    the position of Program Officer for Sudan. He immediately contacted Mr. Kirk Dohne
3    of GlobalCorps enquiring about the status of his application for the earlier position of
4    Program Officer for Sudan. Mr. Dohne told him that he was not selected for that
5    position and that he had sent him a letter to that effect. The plaintiff told him that
6    he had not received it and requested it be resent to him. Mr. Dohne promised to
7    resend it but never did in spite of several reminders. Finding him evasive on the issue
8    the plaintiff told him that he was going to file a complaint of discrimination absence
9    a response of the status of his application. Mr. Dohne warned him that if he did file a
10   complaint he would never be hired in future by USAID. Following the conclusion of
11   the EEO counseling the plaintiff filed an EEO complaint of discrimination on February
12   7, 2001.

13                                    **REPORT OF EEO COUNSELOR**

14   **25.**    The EEO Counselor, Mr. Russell Backus, reported the following facts in his EEO
15   Counselor Report dated February 15, 2001:

16   "Documents discussed below for both solicitations are available in the M/OP files.
17   **Both selection processes were characterized by irregularities and mistakes** that
18   complicated the inquiry process. Although these irregularities were not necessarily
19   related to the Complainant's EEO concerns, **they apparently resulted in hesitance**
20   **by the concerned parties to participate in the counseling process.** Whereas Ms.
21   Eugenia [Mercedes Eugenia, Division Chief and Contracting Officer] agreed initially to
22   set up a meeting with BHR representative so that we could initiate discussion of the
23   Complainant's concerns, she also pursued actions to ensure that the irregularities
24   that occurred in this selection process were not repeated in the future. **This**
25   **apparently resulted in a decision by concerned parties in BHR to avoid discussing**
26   **the matter. This position was possibly supported by M/OP management. Although**
27   **there appeared to be resistance to meeting with the Counselor to discuss the**
28   **selection process,** after the case had been reviewed completely and a decision made

                                           14

not to comply with the Complainant's proposed remedy, Ms. Eugenia agreed to meet with the Complainant, along with a representative of BHR [Bureau of Humanitarian Response], to ensure that the Complainant understood the selection process and to explore alternative remedies. However, the Complainant did not agree to meet with M/OP staff after they made a firm decision not to accept his proposed remedy".

**EEO Counselor Report: Conflict Analyst Position, M/OP-00-1321**

26. "There were 105 applicants, 19 of which were ranked by GlobalCorps (a BHR contractor) on category A, the highest of four pre-selection categories. (A=most qualified; B=less qualified, but still good, C=lacking in required skills; D=disqualified due to a lack of required qualifications). The Complainant was ranked in category A.

"**A key selection document in the M/OP file consists of an August 4 email from Carleene Dei, Director of AFR/SD,** to Aji Joshi and Dana Ott of AFR/SD and Ruth Buckley of AFR/DP. **This email (1) lists Ms. Dei's choice of candidates to be interviewed (six plus a runner-up),** (2) requests the addressees to submit their choices to the Office secretary, and (3) suggests that, on this basis, Mr. Joshi "should be able to make the final selection and we should be able to set up interviews." **This email was forwarded by Mr. Joshi to Angela Martin of BHR/OTI on August 11 without comment; apparently constituting AFR agreed choice of candidates for interview.** Ms. Martin, obviously representing BHR in the selection process, replied to Mr. Joshi by email on August 11, listing her choices for interview (six plus one optional). **Her list was identical to Ms. Dei's with one exception. The Complainant was not included in either list.**

"**These emails (which are attached at Tab B) indicate that (1) the review committee did not meet until interviews were held,** and (2) the committee consisted of the five people mentioned above, four from AFR and one from BHR. **The document containing these emails also reveals at least two irregularities in the selection process. First, Ms. Dei's email included selection criteria that are not**

totally consistent with the criteria included in the solicitation. Ms. Martin noted in her email that she agreed with these "selection criteria." It is significant that Ms. Dei' first criteria states: "I eliminated the candidates that I thought were overqualified ..." In this regard the Complainant was told by the GlobalCorps representative during a phone conversation that he was over-qualified. The second selection irregularity was that at least two of the committee members (Angela Martin and Dana Ott) were not direct hire agency employees. [Emphasis added].

EEO Counselor Report: Sudan Program Officer, M/OP-00-1277

27. "It would appear from the M/OP file that the Complainant's application was not fully considered. His application was mixed with the application documents of another individual with the same last name - A.H. Osman of Salt Lake City. It is not clear that A.H. Osman applied for the Sudan Program Officer position; his letter of application contained in the M/OP file is dated 9/23/9, and it refers to another position and solicitation number: "Field Officer, M/OP-99-2146; Pristina, Kosovo." GlobalCorps submitted its preliminary rankings in the form of a table that includes the name, brief summary of qualifications, and rating. Of the 52 applicants for this position, A.H. Osman [the non-applicant] is listed on the first page with preliminary ranking in the "A" category (attached at Tab E). The summary qualifications is clearly taken from his resume.

28. "There is no resume, letter of application, or other document in the M/OP file for the Complainant except for his Optional Form 612, which is filed together with A.H. Osman's resume. A.H. Osman's 9/23/99 letter of transmittal noted above, and five letters of recommendation for A.H. Osman, all are dated in or before 1999. He is referred to in these letters as Abdulkhadir Osman, Abdul Osman, and Abdulkadir Haju Osman. These documents, including the Complainant's Optional Form 612 are attached at Tab F." [End of EEO Counselor Report, emphasis added].

16

## Failure to Divulge Matters of Importance Is a Violation of Law

## Cover-up of Exclusion of the Plaintiff from Consideration

**29.** The Agency made a cover-up of the fact that it did not consider the application of the plaintiff for the Program Officer for Sudan. A non-applicant was substituted for the plaintiff. The selection panel was aware of this substitution during the evaluation of the applications but took no corrective action and did not report it. The EEO Counselor brought to the attention of the Agency the non-consideration of the plaintiff for the Sudan position without informing the plaintiff of that fact during the counseling sessions. Mr. Jesse Freese stated in response to an interrogatory that as early as the summer of 2001 GlobalCorps informed the Agency that a non-applicant was substituted for the plaintiff for the Sudan position. On August 3, 2001 Mr. Kirk Dohne briefed Ms. Tamra Halmrast-Sanchez that the plaintiff was not considered for the Sudan position [Exhibit 5]. Notwithstanding all of this, the Agency did not articulate to the plaintiff the real reason for his non-selection for the Sudan position. All the officials interviewed by the Investigator withheld in their affidavits disclosing that fact.

**30.** The deposition of Mr. Greg Gottlieb confirms that **as early as the evaluation of the applications in July 2000 they noticed that there was a "mix-up" of applications, "there was something wrong", "something didn't match", "I do remember that there was some confusion as we looked through these CVs.", "--I remember something that wasn't right with some application, and it could have been this one.", "--we were looking through them and something didn't seem to match up on something."** [Emphasis added]. He stated in his deposition:

"A   Yeah.  I tell you what. Now that I've looked at this document and you've showed me this, I have one recollection.  This helps me to recall.  I think--I'm trying remember, but I think **we** said something to **them** about some **mix-up,**

that it appeared that there was something wrong here, that something didn't match. I have a recollection of that."

"But beyond that specific, I don't remember--I remember something that wasn't right with some application, and it could have been this one. I think that's my recollection. As I said, I don't have any specific--that's what I recall, that there was some--we were looking through them and something didn't seem to match up on something. That's all I recall." [Emphasis added].

31.    EEO Investigator, Alexander Faison, took affidavits of management and selection panel officials involved in the Sudan position on the following dates during the period **June 27, 2001 to September 9, 2001**. None of those interviewed made any reference to the fact the plaintiff was not considered for the Sudan position or that a non-applicant was substituted for the plaintiff for the position of Program Officer for Sudan. The tacit silence of the Agency's officials on this material fact misled the Investigator to state in his Report of Investigation that "The Program Officer for Sudan position solicitation received 52 applications. There were 10 applicants, including Complainant, identified by GlobalCorps in the "Part A group". Complainant was not considered for this position. He was substituted by a non-applicant with the same last name. **Since the non-applicant lacked the required federal form (SF-171 or OF-612), the complainant's federal OF-612 was inserted in the application file of the non-applicant.** But the summary qualifications of the application for that file were taken not from the required federal form, which belonged to the Complainant, but from the resume in the file which belonged to the non-applicant! Other application documents submitted by the Complainant with his federal form for the Sudan position, including his resume, were missing.

32.    The Agency was adamant in refusing to have the Complainant talk to or depose the two GlobalCorps officials involved in the Sudan position, Mr. Kirk Dohne and Mr. Jesse Freese. Mr. Dohne left GlobalCorps. Nevertheless, the Complainant was

18

able, through interrogatory questioning, to extract from Mr. Jesse Freese of

GlobalCorps some important information that the defendant withheld from him.

**33.    Interrogatories Directed at Jesse Freese of GlobalCorps**

Q.    "1. Who sent, who delivered on what dates and by what mode and who

received the application of Ms. Jacquelyn Poole-Galdas for Program Officer for Sudan

at GlobalCorps? Please provide name of sender, place of dispatch, mode of delivery

(postal/ fax/e-mail/in-person/through third person), person delivering, person

accepting the delivery, date of dispatch and date of delivery.

A.    The application of Ms. Jacquelyn Poole-Galdas was submitted via fax through

Ted Maly in the Africa Regional Office in Nairobi. The 13-page fax was sent on June

19, 2000 at 09:10 to the attention of Kirk Dohne at 240-465 0244 lax number.

Q.    ` 4. How and when did GlobalCorps first come to know that a non-applicant

(A.H.

Osman) resume was substituted for an applicant (Ahmed S. Osman) in the

Resume Books for the Program Officer for Sudan and what action did

GlobalCorps take then?

A.    GlobalCorps first realized that an administration error had been made

when Mr. Ahmed Osman called the company's office to inquire as to the status of

his Program Officer for Sudan application. Mr. Osman was informed that rejection

notification letters had been mailed and he should have received such a letter or

notification that the position had been filled. GlobalCorps reviewed the Program

Officer for Sudan Resume Book and noticed that a substitution error had

inadvertently been committed. The specific characteristics of this error are detailed

in question 5 below. Mr. Osman's aforementioned telephone call triggered

GlobalCorps' discovery of the error. To the best of GlobalCorps' recollection, this

19

1  was in or around the summer of 2001. GlobalCorps notified OFDA of the error

2  shortly after it was discovered."

3

4  **Q.**    5. Describe in detail how the substitution of the application of a non-applicant

5  for an applicant took place and why it was not detected until this complaint came

6  about.

7  **A.**    **In an August 3, 2001 e-mail sent to Tamra Halmrast-Sanchez, (OFDA), Kirk**

8  **Dohne (GlobalCorps} attempted to explain how the error likely occurred.**

9  For clarity, that e—mail is attached to this document in its entirety.

10      The error was not detected until the events detailed in question 4 occurred.

11  This error was not caught initially because the two applicant's names were both 'A.

12  Osman' and both men were in GlobalCorps' recruitment database. The 'A' in the

13  name of the Mr. Osman who **did not** apply for this particular position (Program Officer

14  for Sudan) was for 'Abdul. 'The 'A' in the name of Mr. Osman who **did** apply for this

15  position was for Ahmed.' Abdul Osman never phoned GlobalCorps inquiring as to why

16  he received a rejection letter pertaining to a position for which he did not apply. If

17  Abdul Osman had called to inquire about this apparent anomaly, the error may have

18  been detected." [End of responses].

19

20  **34.**    Mr. Freese contends that GlobalCorps did not realize "the administrative

21  mistake" until the phone call of plaintiff inquiring about the status of his application

22  for the Program Officer for Sudan and that GlobalCorps informed the Agency about

23  that in the summer of 2001. This claim is without merit for the following reasons:

24      a.    Mr. Gottlieb's deposition shows that the selection panel was aware of the

25          "mix-up" of the applications and "something that wasn't right with some

26          application" in July 2000.

27

28

b.  The plaintiff's phone call to GlobalCorps was in October 2000 and it does not look plausible that it would take GlobalCorps from fall to summer to discover the "administrative error."

c.  The EEO Counselor brought up his findings of the "mix-up" of the applications, the substitution of a non-applicant for the plaintiff to the attention of the Contracting Officer Ms. Mercedes Eugenia in January 2001 and documented it in Report on February 15, 2001.

d.  The resistance of the Agency's management and staff to meet with the EEO Counselor and discuss the selection process and their decisions can only be explained in that the Agency was covering-up something!

e.  GlobalCorps and the Agency refused to date to give the plaintiff a written communication about the outcome of his application for the Sudan position.

**35.** The selection panel members stated in their depositions and responses to interrogatories that the primary document they used in evaluation was the **required federal form**. If so, there is no way they would have missed noticing the substitution of the non-applicant for the plaintiff since the federal form in the non-applicant's file belonged to the plaintiff. In fact, Mr. Greg Gottlieb, after much hesitancy, admitted in his deposition that:

"A   Yeah.  I tell you what. Now that I've looked at this document and you've showed me this, I have one recollection.  This helps me to recall. I think--I'm trying remember, but I think **we** said something to **them** about some **mix-up**, that it appeared that there was **something wrong here**, that **something didn't match. I have a recollection of that.**" [Emphasis added].

21

"But beyond that specific, I don't remember--**I remember something that wasn't right with some application, and it could have been this one.** I think that's my recollection. As I said, I don't have any specific--that's what I recall, that there was some--**we were looking through them and something didn't seem to match up on something.** That's all I recall.

"**I'm saying I don't remember whether we had a conversation about it. It's likely that we did.** I mean I don't remember the--you know, what I'm saying is I don't remember the conversation, but **I do remember that there was some confusion as we looked through these CVs.**"

## JURY DEMAND

**36.**   The Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. Section 1981a..

**37.**   Wherefore, Plaintiff prays that the Court grant such relief as may be appropriate, including injunctive orders, compensatory damages, damages for lost earnings and benefits, costs, and such relief as to make the plaintiff whole for injuries suffered on account of unlawful employment discrimination including litigation fees and front earnings or institution in the position denied.

.Respectfully Submitted,

Ahmed Siddig Osman

12807 Bluet Ln

Silver Spring, MD 20905

(301) 933-4402